IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SOUTHCO, INC., :
:
    Plaintiff/ :
    Counterclaim Defendant, :
:
v. : C.A. No. 10-03-LPS
:
PENN ENGINEERING & MANUFACTURING :
CORP., :
:
    Defendant/ :
    Counterclaim Plaintiff, :

James C. McConnon, Esquire; Alex R. Sluzas, Esquire and Antranig Baronian, Esquire of PAUL & PAUL, Philadelphia, Pennsylvania.
Frederick L. Cottrell, Esquire and Elizabeth R. He, Esquire of RICHARDS, LAYTON & FINGER P.A., Wilmington, Delaware.

Attorneys for Plaintiff/Counterclaim Defendant.

Kevin B. Huff, Esquire; Rebecca A. Beynon, Esquire and Michael E. Joffre, Esquire of KELLOGG, HUBER, HANSEN, TODD, EVANS & FIGEL, PLLC, Washington, D.C.

R. Montgomery Donaldson, Esquire and Lisa Zwally Brown, Esquire of MONTGOMERY, McCRACKEN, WALKER & RHOADS, LLP, Wilmington, Delaware.

Attorneys for Defendant/Counterclaim Plaintiff.

**MEMORANDUM OPINION**

March 7, 2011
Wilmington, Delaware.


**Stark, District Judge:**

Pending before the Court are three Motions: (1) a Motion To Strike And Dismiss (D.I. 14) filed by Plaintiff, Southco, Inc. ("Southco"); (2) a Motion To Strike And Motion To Dismiss Southco's Counterclaims (D.I. 19) filed by Defendant, Penn Engineering & Manufacturing Corp. And PEM Management, Inc. (collectively, "PEM"); and (3) a Motion To Strike Southco's Reply Brief Or Alternatively Grant Leave For A Surreply (D.I. 23) filed by PEM. For the reasons discussed, the Court will deny Southco's Motion To Strike And Dismiss and deny PEM's Motion To Strike And Motion To Dimiss Southco's Counterclaims. In addition, PEM's Motion To Strike Southco's Reply Brief Or Altneratively Grant Leave For A Surreply will be denied to the extent it seeks to strike Southco's Reply Brief and granted to the extent it seeks leave to file a Surreply.

## I. BACKGROUND

Southco initiated this action against Penn Engineering & Manufacturing Corp. ("Penn Engineering") alleging that Penn Engineering infringed three United States Patents assigned to Southco: U.S. Patent No. 5,851,095 (the "'095 patent") (Count I); U.S. Patent No. 6,280,131 (the "'131 patent") (Count II); and U.S. Patent No. 6,468,012 (the "'012 patent") (Count III). (D.I. 1) Penn Engineering filed an Answer (D.I. 8) denying infringement and asserting nine affirmative defenses, including unenforceability due to inequitable conduct (Affirmative Defense IX). In addition, Penn Engineering, along with PEM Management, Inc. ("PEM Management"), filed four counterclaims seeking: a declaratory judgment of noninfringement (Counterclaim I); a declaratory judgment of invalidity (Counterclaim II); a declaratory judgment of unenforceability (Counterclaim III); and judgment that Southco infringes U.S. Trademark No. 2,028,457 ("the '457 Trademark") owned by PEM Management (Counterclaim IV).

Southco filed a Reply (D.I. 16) to PEM's counterclaims, asserting eight affirmative defenses and three counterclaims to PEM's Counterclaim IV for trademark infringement. Specifically, Southco seeks a declaratory judgment of invalidity and noninfringement of the '457 Trademark (Southco Counterclaim I); requests the cancellation of the '457 Trademark (Southco Counterclaim II); and asserts liability for fraudulent registration of the '457 Trademark (Southco Counterclaim III). In response, PEM filed a second Answer (D.I. 18), denying liability for Southco's counterclaims, asserting three affirmative defenses, and asserting a Counter-Counterclaim under Section 33(b) of the Lanham Act to quiet title in its ownership of the '457 Trademark and enforce PEM's right to use the '457 Trademark. Southco then filed an Answer (D.I. 26) to the Counter-Counterclaim, asserting ten affirmative defenses.

## II. STANDARD OF REVIEW

### A. Rule 12(b)(6)

Evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) requires the Court to accept as true all material allegations of the complaint. *See Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir.2004). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotation marks omitted). Thus, the Court may grant such a motion to dismiss only if, after "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000) (internal quotation marks omitted).

However, "[t]o survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a

right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman,* 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). While heightened fact pleading is not required, "enough facts to state a claim to relief that is plausible on its face" must be alleged. *Twombly,* 550 U.S. at 570. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009). At bottom, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.,* 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted). "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly,* 550 U.S. at 558 (internal quotation marks omitted). Nor is the Court obligated to accept as true "bald assertions," *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997) (internal quotation marks omitted), "unsupported conclusions and unwarranted inferences," *Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.,* 113 F.3d 405, 417 (3d Cir.1997), or allegations that are "self-evidently false," *Nami v. Fauver,* 82 F.3d 63, 69 (3d Cir.1996).

### B. Rule 9(b)

In pertinent part, Federal Rule of Civil Procedure 9(b) provides that "[i]n alleging fraud . . . a party must state with particularity the circumstances constituting fraud . . . . Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." The purpose of

3

Rule 9(b) is to provide defendants with notice of the precise nature of the claim against them, not to test the factual allegations of the claim. *See Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984). Although date, place, and time allegations may fulfill the requirement of pleading with particularity, these types of allegations are not required to satisfy Rule 9(b), so long as the circumstances of the alleged fraud are pled sufficiently "to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *Id.*

Inequitable conduct before the PTO is considered "a broader concept than fraud" and must be pled with particularity in accordance with Rule 9(b). *Ferguson Beauregard/Logic Controls, Div. of Dover Res., Inc. v. Mega Sys., LLC*, 350 F.3d 1327, 1344 (Fed. Cir. 2003). "[T]o plead the 'circumstances' of inequitable conduct with the requisite 'particularity' under Rule 9(b), the pleading must identify the specific who, what, when, where and how of the material misrepresentation or omission committed before the PTO." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1328 (Fed. Cir. 2009). Although a party may plead facts upon "information and belief," it must also set forth the "specific facts upon which the belief is reasonably based." *Id.* at 1330. An individual associated with the filing and prosecution of a patent application engages in inequitable conduct when he or she makes an affirmative misrepresentation of a material fact, fails to disclose material information, or submits false material information to the PTO, with a specific intent to deceive the PTO. *See Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1365 (Fed. Cir. 2008) (noting that each element must be proven by clear and convincing evidence); *see also* 37 C.F.R. § 1.56 (2008).

4

## III. DISCUSSION

### A. PEM's Motion To Strike Southco's Reply Brief

By its Motion, PEM requests the Court to strike Southco's Reply Brief In Support Of Its Motion To Strike And Dismiss (D.I. 21), on the grounds that the Reply Brief improperly raises new arguments that were not raised in Southco's initial motion. Alternatively, PEM requests leave to file a Surreply.

Southco has filed a response to PEM's Motion to Strike, contending that its Reply Brief does not raise new arguments, and indicating that it would not object to the filing of PEM's Surreply, if Southco was permitted to file a response to that Surreply.[1] PEM has not filed a Reply Brief in support of its Motion To Strike.

The Court will deny PEM's Motion to the extent it seeks to strike Southco's Reply Brief. Southco's Reply Brief reiterates three arguments, all of which were introduced in Southco's Opening Brief: (1) the alleged material misrepresentations were arguments of counsel;[2] (2) the alleged omitted information was cumulative; and (3) PEM failed to explain how the Examiner could have used the information in assessing patentability. (*See* D.I. 15 at 2 ("PEM's pleadings explain neither 'why' the alleged misrepresentations and omissions were material and *not cumulative nor 'how' the Examiner could have used the information in assessing the patentability of the claims.*") (emphasis added)) Thus, the Court finds no basis to strike

---

[1] The parties have attached to their briefing the proposed Surreply and the proposed Response to the Surreply.

[2] *See* D.I. 15 (Opening Brief) at 1 ( "[t]he alleged material misrepresentations were arguments made to the Examiner during the reexamination"); *id.* at 2 ("Southco's counsel argued to the Examiner that protrusions and rigid connection were not disclosed in that document.")

5

Southco's Reply Brief.

Because Southco did not raise new arguments in its Reply Brief, the Court concludes that the filing of PEM's Surreply Brief is unnecessary. However, Southco does not object to the filing of PEM's Surreply Brief, so long as Southco is permitted to file a response to that Surreply Brief. PEM has not responded to Southco's proposal and, thus, appears to have no objection. Accordingly, the Court will permit the filing of both PEM's Surreply Brief and Southco's Response to the Surreply Brief, and, therefore, the Court will grant PEM's Motion to the extent it requests leave to file a Surreply. Both PEM's Surreply (D.I. 23, Exh. A) and Southco's Response to the Surreply (D.I. 24, Exh. A) will be deemed filed.

### B. Southco's Motion To Dismiss And Strike PEM's Affirmative Defense IX and Counterclaim III

In its Answer to the Complaint, PEM contends in both Affirmative Defense IX and Counterclaim III that Southco engaged in inequitable conduct through misrepresentations and omissions during reexamination proceedings involving the '095 patent. (D.I. 8) PEM requested reexamination of the '095 patent in light of fasteners found in a prior art catalog from Huck International, Inc. (the "Huck reference" or the "Huck document").[3] (D.I. 8 at ¶ 36(c)) The Examiner granted reexamination, finding that "[a] reasonable examiner would have considered these teachings important (especially the combination taught in the Huck document) in deciding wheather [sic] or not the claims 1-17 of the ['095 patent] are patentable." (*Id.*) (internal quotation marks omitted). Thereafter, the Examiner issued a First Office Action, rejecting numerous claims of the '095 patent as obvious in light of the Huck reference. (*Id.* at ¶ 36(d))

---

[3]PEM does not allege that Southco failed to disclose the Huck document to the PTO during the initial prosecution of the Southco patents.

6

According to PEM, Southco, through its attorney, James C. McConnon, thereafter misrepresented to the Examiner that "even if [the Huck reference] is a valid reference, it does not disclose (in his opinion) a 'rigid connection' between the head of the screw and the knob," as is required by the Southco patents. (*Id.* at ¶ 36(e)) (internal quotation marks omitted) PEM alleges that Southco also misrepresented to the PTO that the Huck reference did not show protrusions, as is also required by the '095 patent. (*Id.* at ¶ 36(f))

Following an initial rejection by the Examiner of certain claims on the grounds of anticipation in light of the Huck reference, Southco appealed to the Board of Patent Appeals and Interferences, arguing "that the Huck reference does not show a 'means to rigidly secure the head portion of the screw to the inner surface of the knob.'" (*Id.* at ¶ 36(g), (h)) Ultimately, the Examiner allowed the claims, finding that the Huck document "does not disclose a screw head structure . . . that includes 'a plurality of integral protrusions' that . . . provide a rigid connection or rigidly secure the head of the screw to the inner surface of the knob." (*Id.* at ¶ 36(i)) The Examiner also found that the Huck document "does disclose a drawing figure which shows lines on the screw head outer surface that could be protrusions, but there is no way to tell if these lines are protrusions or are merely score lines or shadow lines in the drawing." (*Id.*)

By its Affirmative Defense IX and Counterclaim III, PEM contends that Southco knew the Huck reference disclosed a rigid attachment of the knob to the screw because two of its inventors were also inventors of another patent that referenced (1) retractable captive screw designs like the Huck reference, that had a rigid attachment between the knob and the screw head, and (2) knurled teeth in the context of a rigid connection. (*Id.* at ¶ 36(k)-(n)) Thus, PEM asserts that Southco knew that a knurled surface like the one depicted in the Huck reference

7

could produce a rigid connection, but Southco nonetheless asserted the opposite to obtain the allowability of the '095 patent. (*Id.* at ¶ 36(n)) PEM further contends that Southco failed to provide the Examiner with samples of the fastener from the Huck catalog, which would have demonstrated the falsity of Southco's arguments. (*Id.* at ¶ 36(l))

By its Motion, Southco contends that Affirmative Defense IX and Counterclaim III should be stricken under Fed. R. Civ. P. 9(b), because PEM failed to explain why the alleged material misrepresentations and omissions were material and not cumulative. Southco further contends that PEM failed to explain how the Examiner could have used the information provided in assessing the patentability of the claims. According to Southco, the alleged misrepresentations were arguments of counsel and, therefore, they cannot be considered misrepresentations. Southco also contends that the focus of the reexamination was the Huck document and, therefore, Southco had no legal obligation to provide the Examiner with the actual fastener from the Huck catalog. Thus, Southco maintains that it cannot be held responsible for a material omission.

Reviewing PEM's allegations of inequitable conduct in light of the applicable standard of review and the legal elements required to establish a claim of inequitable conduct, the Court concludes that Southco has not demonstrated, at this juncture, that PEM's inequitable conduct defense and counterclaim should be dismissed. While the Court understands Southco's argument that the Huck fastener itself was not the subject of the reexamination, the Court cannot conclude that Southco's knowledge of the actual fastener was irrelevant to the interpretation of the Huck reference that depicted the fastener. Indeed, PEM's allegations are that Southco's arguments to the Examiner amounted to material representations because Southco knew its arguments were factually and patently false given their pre-existing knowledge of the actual Huck fastener.

8

Southco points to Section 2258 of the Manual of Patent Examining Procedure, as support for its contention that it had no duty to disclose the actual fastener to the Examiner. However, Section 2258 only provides that "[r]ejections will not be based on matters other than patents or printed publications, such as public use or sale, inventorship, conduct issues, etc."

Southco also relies on *Total Containment, Inc. v. Environ Prods., Inc.*, 921 F. Supp. 1355 (E.D. Pa. 1995), for the proposition that the PTO would have returned the physical fastener had Southco submitted it. The PTO's return letter reproduced in *Total Containment* stated that the documents at issue there were being returned as improper submissions because they were "clearly not explanations of the pertinency or the manner of applying any prior art to at least one claim of the patent." *Id.* at 1371. Here, the Court cannot conclude that the fastener was irrelevant to the manner in which the prior art Huck reference should have been applied to the claims.

Relying on the Federal Circuit decision in *Therasense, Inc. v. Becton, Dickinson & Co.*, 593 1289, 1305 (Fed. Cir. 2010), PEM further asserts as a basis for its inequitable conduct claim that Southco failed to disclose to the PTO contradictory statements Southco had made concerning another patent. Specifically, PEM contends that Southco's inventors had argued to the PTO during reexamination that a knurled surface could not form a rigid connection. However, in a separate patent, Southco acknowledged the exact opposite, i.e. that a knurled surface could produce a rigid connection.

Southco distinguishes *Therasense* on the ground that the representations in *Therasense* were made in another forum and withheld from the PTO. Southco further points out that the *Therasense* decision upon which PEM relies has been vacated and the matter set for an *en banc*

9

hearing. At this juncture, however, the Court cannot conclude that PEM's allegations of contradictory arguments are insufficient as a matter of law to form the basis of an inequitable conduct claim.

In sum, the Court concludes that PEM has adequately pled its inequitable conduct affirmative defense and counterclaim. PEM has specifically identified the "who, what, when, and where" of the representations it alleges were false and material. PEM has further identified "how" Southco's alleged misrepresentations affected the Examiner's evaluation of the patents-in-suit, in that PEM contends that if the Examiner knew about the true nature of the fastener depicted in the Huck reference, the Examiner would not have allowed the patent. Accordingly, the Court concludes that PEM's pleadings are sufficient to satisfy the requirements of Fed. R. Civ. P. 9(b) and the Federal Circuit's decision in *Exergen Corp.*, 575 F.3d at 1328. Therefore, the Court will deny Southco's Motion To Dismiss And Strike.

### C. PEM's Motion To Strike And Dismiss Southco's Counterclaims II and III

In its Reply to PEM's Counterclaim IV asserting trademark infringement, Southco alleges that (1) PEM's '457 Trademark was procured by fraud on the PTO and should be cancelled pursuant to 15 U.S.C. § 1119 (Southco Counterclaim II), and (2) as a result of PEM's fraudulent registration of the '457 Trademark, Southco has sustained injury and is entitled to compensatory damages pursuant to 15 U.S.C. § 1120 (Southco Counterclaim III).

By its Motion To Strike And Dismiss, PEM contends that Southco's counterclaims of fraud fail to satisfy Fed. R. Civ. P. 9(b). Specifically, PEM contends that Southco has not pled any facts showing that PEM knowingly made false statements to the PTO or that the PTO relied upon PEM's allegedly false statements. PEM further contends that Southco cannot plead

reliance, because the PTO rejected PEM's mark after PEM made the allegedly false statements asserted by Southco. PEM adds that Southco should not be given an opportunity to replead its counterclaim.

Pursuant to 15 U.S.C. § 1127, a trademark is defined as "any word, name, symbol, or device or any combination thereof" used by any person "to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769 (1992). To be registered, "a mark must be capable of distinguishing the applicant's goods from those of others." *Id.* (citing 15 U.S.C. § 1052) Marks are often classified in one of five generally increasing categories of distinctiveness: (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful. *Id.* Marks which are suggestive, arbitrary, or fanciful are considered inherently distinctive and are entitled to trademark protection. *Id.* Generic marks that refer to the genus of which the particular product is a species are not eligible for trademark protection. *Id.* However, descriptive marks may become eligible for trademark protection under 15 U.S.C. § 1052(f), if they acquire distinctiveness. *Id.* Acquired distinctiveness is also referred to as "secondary meaning."

To establish acquired distinctiveness, the applicant must submit evidence such as affidavits, declarations, depositions, other evidence showing substantially exclusive use during a prior five year period. 37 C.F.R. § 2.41. The concurrent use of a mark by another during this five year period can refute a claim of "substantially exclusive use." Even "long and continuous use" of a mark by an applicant is insufficient to show secondary meaning if the applicant's use is not substantially exclusive. *Flowers Indus., Inc. v. Interstate Brands Corp.*, 5 U.S.P.Q.2d 1580,

11

1588-89 (T.T.A.B. 1987). Thus, "[w]hen the record shows that purchasers are confronted with more than one (let alone numerous) independent users of a term or device, an application for registration under Section 2(f) cannot be successful, for distinctiveness on which purchasers may rely is lacking under such circumstances." *Levi Strauss & Co. v. Genesco, Inc.*, 742 F.2d 1401, 1403 (Fed. Cir. 1984).

A party seeking to establish a claim of fraud in the procurement of a federal trademark must demonstrate: "(1) the false representation regarding a material fact; (2) the registrant's knowledge or belief that the representation is false (scienter); (3) the intention to induce action or refraining from action in reliance on the misrepresentation; (4) reasonable reliance on the misrepresentation; and (5) damages proximately resulting from such reliance." *Stanfield v. Osborne Indust., Inc.*, 52 F.3d 867, 874 (10th Cir. 1995). Statements regarding the use of the mark on goods and services are material to the issuance of a registration covering such goods and services. *See Hachette Filipacchi Presse v. Elle Belle LLC*, 85 U.S.P.Q.2d 1090, 1093 (T.T.A.B. 2007).

In this case, Southco alleges that PEM made material misrepresentations concerning the acquired distinctiveness of its mark. Specifically, Southco contends that PEM monitored Southco's products, produced these products to the PTO in proceedings concerning other PEM trademarks, and knew that Southco continuously sold class 52 fasteners displaying the mark that PEM now alleges would be confusingly similar to PEM's '457 Trademark. Thus, Southco contends that PEM made a material misrepresentation of fact to the PTO when it stated in its Trademark Application that the "[a]pplicant believes that the mark has become distinctive as applied to applicant's goods by reason of substantially exclusive and continuous use thereof as a

trademark by applicant for more than five years before the date on which this claim[] of distinctiveness is made." (D.I. 16 at ¶ 44) Southco further contends that PEM made a second material misrepresentation when it represented in a declaration that PEM's President was "not aware [that] this groove trademark has been used by any other manufacturer, distributor or dealer to denote or describe any metal fastener products and therefore believe[s] that the circular groove marking is distinctive of the goods of Penn Engineering & Manufacturing Corp." (*Id.* at ¶ 46)

PEM takes issue with Southco's allegations concerning the monitoring of Southco's products and their production before the PTO in other proceedings, contending that they are insufficient to show that PEM's President should have been put on notice of Southco's allegedly infringing product. At this juncture, however, the Court must take the allegations of Southco's Counterclaim as true and, therefore, the Court concludes that Southco has sufficiently pled material misrepresentations for purposes of stating a claim of fraud on the PTO in procurement of a trademark.

PEM also challenges Southco's pleadings to the extent they allege reliance by the PTO. PEM contends that Southco cannot establish reliance as a matter of law, because the Examiner rejected the trademark application after considering the affidavits containing the alleged misrepresentations. Specifically, PEM contends that the Examiner "rejected PEM's alleged misrepresentation that PEM was the substantially exclusive user of the mark." (D.I. 27 at 6)

In rejecting PEM's assertions of acquired distinctiveness, the Examiner stated:

> Applicant contends that the mark has acquired distinctiveness based upon
> (1) substantial and exclusive use of the mark since August 29, 1986, (2) consumer statements of mark recognition, (3) specific dollar sales of the goods,
> (4) advertising expenditures, and (5) advertising material demonstrating the

13

> applicant's efforts to associate the mark with goods. (Application at page 2 and Exhibits A-C.)
>
> The examining attorney has carefully considered the preliminary evidence of acquired distinctiveness provided by the applicant, but finds that it does not yet rise to the level necessary for the applicant to meet its burden of proving acquired distinctiveness.
>
> The mere fact that the mark has been in use since April 29, 1986, does not evidence acquired distinctiveness... Long use of the mark alone is not sufficient to demonstrate acquired distinctiveness; the manner of that use, and the nature and extent of advertising promoting the configuration as a source indicator, must also support a finding of acquired distinctiveness.

(D.I. 22, Exh. B at 155)

In the Court's view, these statements do not show, as PEM contends, that the Examiner did not rely on the alleged misrepresentations identified by Southco. Rather, the Examiner merely expressed the view that the assertions in the application and affidavit were insufficient standing alone to establish acquired distinctiveness. Indeed, the Examiner concluded her remarks stating, "Although the examining attorney has refused registration, the applicant may respond to the refusal to register by submitting evidence and argument in support of registration." (*Id.* at 156) That the Examiner sought additional evidence on the issue of distinctiveness does not, in the Court's view, establish that she did not rely on the initial evidence submitted.

Moreover, as the Federal Circuit has stated in the patent context, the submission of a false declaration is presumed to be material. *See Refac Int'l Ltd. v. Lotus Dev. Corp.*, 81 F.3d 1576, 1583 (Fed. Cir. 1996); *see also Rohm & Haas Co. v. Crystal Chem. Co.*, 722 F.2d 1556, 1571 (Fed. Cir. 1983) ("In contrast to cases where allegations of fraud are based on the withholding of prior art, there is no room to argue that submission of false affidavits is not material.").

"Affidavits are inherently material, even if only cumulative. The affirmative act of submitting an affidavit must be construed as being intended to be relied upon." *Refrac*, 81 F.3d at 1583. Such reasoning appears to have applicability in the present context as well.

Accordingly, the Court cannot conclude, at this juncture, that Southco's allegations are insufficient to support its affirmative defense and counterclaim of fraud on the PTO in procuring the '457 Trademark. Therefore, the Court will deny PEM's Monion To Strike And Motion To Dismiss Southco's Counterclaims.

## IV. CONCLUSION

For the reasons discussed, the Court will grant in part and deny in part PEM's Motion To Strike Southco's Reply Brief Or Alternatively Grant Leave For A Surreply. Specifically, PEM's Motion will be denied to the extent it seeks to strike the Reply Brief and granted to the extent it seeks leave to file a Surreply. In addition, the Court will deny Southco's Motion To Strike And Dismiss and deny PEM's Motion To Strike And Motion To Dismiss Southco's Counterclaims. An appropriate Order will be entered.